**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **O'NEAL HOMES, INC., GEORGE** | ) | |
| **O'NEAL, individually, and MARILYN** | ) | |
| **O'NEAL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 06-0881-CG-B** |
| | ) | |
| **CITY OF ORANGE BEACH, ORANGE** | ) | |
| **BEACH CITY COUNCIL and MAYOR,** | ) | |
| **ORANGE BEACH DEPARTMENT OF** | ) | |
| **COMMUNITY DEVELOPMENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the court on the parties' cross motions for summary judgment and a motion to strike filed by the City of Orange Beach, Orange Beach City Council and Mayor, and Orange Beach Department of Community Development (collectively, the "City of Orange Beach" or "defendants"). (Docs. 42, 49, and 53).  For the reasons set forth below, plaintiffs' O'Neal Homes, Inc., George O'Neal, and Marilyn O'Neal (collectively, the "O'Neals" or "plaintiffs") motion for summary judgment is **DENIED,** and defendants' motion for summary judgment is **GRANTED.**  The motion to strike is **MOOT**.

Plaintiffs initiated this lawsuit on December 29, 2006, by filing a complaint against the defendants, alleging claims based on (1) substantive due process violations, (2) procedural due process violations, (3) taking without due compensation, (4) inverse condemnation, (5) fraud/misrepresentation and suppression, and (6) negligence/failure to provide honest

government.  (Doc. 1).[1]

The essence of the complaint is that the defendants improperly amended the zoning ordinance in the City of Orange Beach, preventing the plaintiffs from building duplexes.  Until the challenged amendment took effect, the zoning ordinance in the City of Orange Beach would have allowed the O'Neals to build duplexes on three lots they owned.  The amended zoning ordinance disallowed the duplexes.  The amendment allegedly suffers from two defects.  First, notice of the proposed amendment was not published in a newspaper called "The Islander," which is available in the City of Orange Beach.  The plaintiffs say that the failure to publish certain notices in The Islander violated state statutory requirements that the City of Orange Beach had to follow to pass the amendment to the zoning ordinance.  Second, the members of the City Council who passed the amendment on October 18, 2005 were under the impression that the amendment would take effect on January 1, 2006.  The text of the amendment indicated that it would take effect once it was passed and posted, which gave it an effective date in November 2005.  The O'Neals applied for their permit to build the duplexes in December 2005, before January 1, 2006, but after the amendment became effective according to its text.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  No party disputes personal jurisdiction or venue.

**I.    SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

---

[1]Constitutional claims against state and local entities usually come before this court under 42 U.S.C. § 1983.  Mitchum v. Foster, 407 U.S. 225, 238 (1972) (§ 1983 was enacted to enforce the Fourteenth Amendment.).  In light of this court's ruling on the merits of the constitutional claims, it does not address the propriety of pleading constitutional violations outside of the § 1983 context.

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The

movant bears "the initial burden to show the district court, by reference to materials on file, that

there are no genuine issues of material fact that should be decided at trial." Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

> As succinctly stated by the Eleventh Circuit:
>
> A factual dispute is genuine only if "a reasonable jury could return a verdict for
> the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d
> 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the
> burden of proving that no genuine issue of material fact exists.  O'Ferrell v.
> United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument
> of the moving party, the district court must view all evidence in the light most
> favorable to the non-moving party, and resolve all reasonable doubts about the
> facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.
> 1999).  Assuming the moving party has met its burden, the non-movant must then
> show a genuine dispute regarding any issue for which it will bear the burden of
> proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).  The

purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587,

592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817

(1995).

> In opposing a motion for summary judgment, "a party may not rely on his
> pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating
> Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon
> the district court to distill every potential argument that could be made based
> upon the materials before it on summary judgment.  Blue Cross & Blue Shield v.
> Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties
> to formulate arguments; grounds alleged in the complaint but not relied upon in
> summary judgment are deemed abandoned.  Road Sprinkler Fitters Local Union

Case 1:06-cv-00881-CG-B   Document 80   Filed 05/14/08   Page 4 of 33

No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994)(citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986)), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Id. at 599.  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  Id. at 323.

## II.    FACTS

George and Marilyn O'Neal, husband and wife, live in Orange Beach, Alabama.  (Doc. 53-3, George O'Neal Depo., pp. 6-9).  George O'Neal has worked as a homebuilder for ten years, first as a sole proprietor and currently through O'Neal Homes, Inc., which he incorporated in 2003.  (Doc. 53-3, George O'Neal Depo., pp. 9-10, 21; Doc. 53-5, O'Neal Articles of Incorporation).

The City of Orange Beach passed a zoning ordinances for the first time in 1991.  (Doc. 53-6, Lawson Depo., p. 24).  At that time, the City of Orange Beach, through section 4.0201 of the zoning ordinance, carved out an exception to the new zoning ordinance for lots located in subdivisions platted prior to 1991, such that one could build duplexes on those lots without regard to the setback or lot width restrictions established by section 4.02.  (Doc. 53-6, Lawson Depo., pp. 23-24; Doc. 53-7, Defendants' Supplemental Interrogatory Responses, ¶ 12; Doc. 53-8, 8/16/05 City Council Hearing Minutes).

The O'Neals desired to take advantage of the exception provided by section 4.0201 of the zoning ordinance and contacted the City of Orange Beach to determine where they could build

duplexes.  (Doc. 53-3, George O'Neal Depo., pp. 29 and 42).  The O'Neals purchased lots 219,

220, and 221 of Bear Point Estates in August 2004 in order to build duplexes there.  (Doc. 53-3,

George O'Neal Depo., pp. 42 and 127; Doc. 53-9, O'Neal Deeds for Lots 219, 220, and 221).

Each of the lots was platted prior to 1991.  (Doc. 53-6, Lawson Depo., p. 24).  In August 2005,

George O'Neal met with the Orange Beach Office of Community Development and the City

Administrator regarding the construction of duplexes on the three lots.  (Doc. 53-1, Moon Depo.,

pp. 8-16, 18-20; Doc. 53-6, Lawson Depo., pp. 16-18).  On August 10, 2005, the City

Administrator, Jeffrey Moon, replying to a question that George O'Neal posed at one of the

meetings, stated the following: (1) under section 4.0201 of the zoning ordinance, O'Neal could

build duplexes on the property; (2) the City of Orange Beach had recently discussed repealing

section 4.0201 of the zoning ordinance and might begin the legislative process to do so as early

as that upcoming September; and (3) "if [O'Neal] ha[d] a building permit prior to Section 4.0201

being repealed, [he] would be 'grandfathered in'."  (Doc. 53-11, 8/10/05 Letter from Moon).

On September 6, 2005, the Orange Beach City Council for the first time formally raised

the issue of amending section 4.0201 of the zoning ordinance.  (Doc. 53-12, Minutes

Compilation, p. 3).  It apparently did so as part of an ongoing analysis of various ways to

improve the zoning ordinance.  (Doc. 51-5, Undated Mayor's Letter to Citizens and Attached

Special Interest Document Dated January 2006; Doc. 51-6, Special Interest Groups' Report

Dated January 2006; Doc. 51-7, Special Interest Group's Report Dated January 2006).  Because

the Planning Commission had not yet discussed any such amendment and because the City of

Orange Beach understood Alabama law to require the Planning Commission to discuss the

amendment prior to the City Council's consideration of it, the City Council directed the issue to

the Planning Commission for its review.  (Doc. 53-12, Minutes Compilation, p. 3; Doc. 53-13,

Fikes Depo., pp. 22-23).  On September 7, 2005, Jim Lawson, the director of the Community

Development Office, issued an internal memorandum to the Planning Commission, describing

the effect of the amendment to strike section 4.0201 from the zoning ordinance such that

duplexes could no longer be built as a matter of right.  (Doc. 53-14, 9/7/05 Community

Development Memo).  He further wrote that "a public hearing before the Planning Commission

ha[d] been set for September 13, 2005 to deal with the amendment [and w]ith concurrence of the

City Council, the amendment would be written to eliminate the exemption clause as of January

1, 2006."  (Doc. 53-14, 9/7/05 Community Development Memo).

     According to the Planning Commission meeting minutes, on September 13, 2005, Jim

Lawson presented an amendment that "would modify the exemption clause for 'grandfathering'

properties platted before 1991."  (Doc. 53-12, Minutes Compilation, p. 9).  The minutes further

state that, although the public hearing was opened for comments, "no one was signed up to

speak."  (Doc. 53-12, Minutes Compilation, p. 9).

     The Public Notice that preceded the September 13, 2005, meeting says that the

"[p]roposed amendment would modify [section 4.0201 of the zoning ordinance, which is] the

exemption clause for 'grandfathering' properties platted before 1991."  (Doc. 53-15, Public

Notice for 9/13/05 Planning Commission Meeting, p. 2).  The Public Notice bears a stamp

indicating that it was posted at the Orange Beach Municipal Complex, the Orange Beach

Department of Public Safety, the Orange Beach Post Office, and the Orange Beach Building

Department on August 26, 2005.  (Doc. 53-15, Public Notice for 9/13/05 Planning Commission

Meeting, p. 3).  Paulette Taylor[2], who is the Secretary of the Orange Beach Planning Commission and is charged with posting public notices for the City of Orange Beach, stated that, although she certifies that the notices are posted at the four locations indicated on the stamp, she does not place the notices herself, does not go to each location to determine whether notices have been posted, and recognizes that, even if a notice was posted, anyone could remove it.  (Doc. 53-13, Fikes Depo, pp. 5-6, 9-13).       Although the stamp on the notice only indicates that the notice was posted in four places, Ms. Taylor testified that notices are posted in seven locations: City Hall, the community development, the police department, the post office, the library, the community center, and Bear Point Civic Association.  (Doc. 65-7, Fikes Depo., pp. 9 and 12).

The defendants also published notice of the September 13, 2005 Planning Commission meeting in the Mobile Press-Register on September 1, 2005 and September 7, 2005.  (Doc. 53-16, 8/30/05 Press Register E-mail).  The City of Orange Beach did not publish notice in another newspaper, The Islander.  (Doc. 54).

On September 16, 2005, George and Marilyn O'Neal took out a loan to fund construction of the duplexes.  (Doc. 53-3, George O'Neal Depo., pp. 70-71; Docs. 53-20 and 59-2, Construction Mortgage).

The Planning Commission did not block the amendment to the zoning ordinance, and the amendment went back to the City Council for its consideration on October 18, 2005.  The Public Notice preceding the October 18, 2005 public hearing and City Council meeting during which the amendment to section 4.0201 of the zoning ordinance was formally passed bears a stamp indicating that the Public Notice was posted at the Orange Beach City Hall, the Orange Beach

---

[2]Paulette Taylor is the former Paulette Fikes.

Police Department, the Orange Beach Post Office, and the Orange Beach Public Library on

October 3, 2005.  (Doc. 53-21, Public Notice for 10/18/05 City Council Hearing).  Cathy

Constantino, the City Clerk and the person responsible for posting the public notice who signed

the stamp, testified that she does not post the notice herself.  (Doc. 53-4, Constantino Depo., p.

16).  Cherie Stobert-Norman, who was responsible for posting the notice on Cathy Constantino's

behalf and initialed the stamp indicating that the Public Notice was posted, testified by affidavit

that she "thoroughly and conscientiously" posted notices and never "certif[ied] receipt of the

notices for posting where I did not post the notices as directed."  (Doc. 65-10, Stobert-Norman

Affidavit).  This Public Notice was not published in The Islander, either.  (Doc. 53-4,

Constantino Depo., pp. 8-9).

Regardless, the Public Notice for the October 18, 2005 City Council Hearing shows that

section 4.0201 of the zoning ordinance would be removed from the zoning ordinance.  It also

shows that the zoning ordinance would set certain lot area, lot width, setback, and building

coverage requirements, and indicates that the ordinance "shall become effective immediately

upon its adoption and publication as required by law."  (Doc. 53-21, Public Notice for 10/18/05

City Council Hearing).

Jim Lawson presented the amendment at the meeting on October 18, 2005.  (Doc. 53-12,

Minute Compilation, p. 11).  At the meeting, Jim Lawson stated that, between the September 13,

2005 Planning Commission meeting and October 18, 2005, a sentence was added to the

amendment to the zoning ordinance that would allow the construction of certain single family

homes, despite the removal of section 4.0201 from the zoning ordinance.  (Doc. 53-12, Minutes

Compilation, p. 11).  He also said that the amendment would not take effect until January 1,

2006.  (Doc. 53-10, Moon Depo., pp. 17-18).  According to the minutes from the October 18,

2005 City Council meeting, the City Council "suspend[ed] the rules to allow for immediate

consideration of this ordinance."  (Doc. 53-12, Minutes Compilation, p. 14).  Jim Lawson and

City Councilman Jeff Silvers testified that the City Council understood that the amendment

would take effect on January 1, 2006.  (Doc. 53-6, Lawson Depo., pp. 80-82, 111-12; Doc. 53-

18, Silvers Depo., pp. 8-9).

The amendment to the zoning ordinance was posted in three public places on November

9, 2005.  (Doc. 65-4, Posted Ordinance No. 2005-937).  It shows that the City Council removed

section 4.0201 from the zoning ordinance, established the lot area, lot width, and other factors

for various zoning categories, says "[t]his Ordinance shall become effective immediately upon

its adoption and publication as required by law," and indicates that it was adopted on October 18,

2005.  (Doc. 65-4, Posted Ordinance No. 2005-937).

Several landowners and developers submitted duplex permit applications between

October 18, 2005 and the end of the year.  (Doc. 53-22, Permit Application Compilations).

Steve Jones submitted one on behalf of SPK Morris LLP on December 9, 2005.  (Doc. 53-22,

Permit Application Compilation, p. 2).  SPK Morris LLP received its permit on December 21,

2005.  (Duplex Application Compilation, p. 3).  Laurel Devaney, an employee in the Community

Development Office for Orange Beach, submitted an application with her husband, Scott,

between November 3, 2005 and November 28, 2005.  (Doc. 53-22, Permit Application

Compilation, pp. 4-5; Doc. 53-6, Lawson Depo., pp. 30-31).  The Devaneys' application bears a

stamp of November 3, 2005, but the permit they received on December 6, 2005 shows that they

applied for the permit on November 28, 2005.  (Doc. 53-22, Permit Application Compilation, pp.

4-5).

The O'Neals submitted their three applications no later than December 29, 2005.  (Doc. 53-22, Permit Application Compilation, pp. 6-11).  Between the time they submitted applications to the City of Orange Beach and early October 2006, the O'Neals worked with the City of Orange Beach to resolve concerns that the city raised.  (Doc. 53-3, George O'Neal Depo., pp. 48-50).  The City of Orange Beach issued a permit for the O'Neals to build a duplex on lot 221 on July 31, 2006, and permits for the O'Neals to build duplexes on lots 219 and 220 on August 7, 2006.  (Doc. 53-22, Permit Application Compilation, pp. 6-11).  The building permits cost the O'Neals $1,698.77 each.  (Doc. 53-22, Permit Application Compilation, pp. 6-11).  The City of Orange Beach has not refunded the fees it charged for the permits.  (Doc. 53-3, George O'Neal Depo., p. 70).  The O'Neals began to clear the lots and, on one of the lots, began construction. (Doc. 53-3, George O'Neal Depo., pp. 125-26).

On October 3, 2006, the Office of Community Development issued stop work orders. (Doc. 53-28, Stop Work Order Compilation).  Stop work orders were sent to George O'Neal by certified mail.  (Doc. 51-3, Lawson Depo., p. 31).  At a City Council meeting later that afternoon, the city attorney, Wanda Cochran, speaking at the request of the mayor of Orange Beach, Pete Blalock, explained that "everyone was under the impression that that ordinance [passed on October 18, 2005], that new zoning ordinance was to take effect on January 1st, 2006. That, however, is not what in fact happened. The ordinance unambiguously and plainly states that it is to take effect upon its adoption and publication as required by law.  According to the law, that ordinance became effective on November 9th, I believe, 9 through 15."  (Doc. 53-29, 10/3/06 Meeting Transcript, p. 2).  Wanda Cochran explained that the city intended to enforce

the ordinance as it was passed with its effective date in November.  (Doc. 53-29, 10/3/06 Meeting Transcript, p. 2).  The mayor recognized the possibility that those parties who were adversely affected by the decision to enforce the new zoning ordinance as written, specifically George O'Neal, might pursue legal action.  He said that he would abide by what a court ruled.  (Doc. 53-29, 10/3/06 Meeting Transcript, p. 3).

George O'Neal filed appeals of the stop work orders and a request for variance on November 28, 2006.  (Doc. 51-11, Appeal From Stop Work Order and Request for Variance; Doc. 53-31, Public Notice for 9/18/06 Board of Adjustment Meeting).[3]  The Board of Adjustment for the City of Orange Beach did not hear the appeals because, according to the zoning ordinance, George O'Neal filed his appeals too long after receiving the stop work orders to trigger a hearing.  (Doc. 51-10, 12/6/06 Letter).  The City of Orange Beach placed George O'Neal's request for variances on the Board of Adjustment's December 18, 2006 agenda.  (Doc. 51-10, 12/6/06 Letter).  It was denied.  (Doc. 51-12, 12/18/06 Board of Adjustment Minutes).

The parties' briefing includes facts and argument pertaining to the plaintiffs' claim that certain notice should have been published in The Islander.  The court need not reach this issue to resolve the motions and consequently omits the facts pertaining to that issue in this order.

## III.    COUNT ONE - SUBSTANTIVE DUE PROCESS

Count One of the plaintiffs' complaint alleges a substantive due process claim based on the defendants' allegedly fluid, pretextual rationale and regulatory interpretations for preventing

---

[3]The court notes that the Public Notice that the plaintiffs cite shows that the variance requests were addressed during a September 18, 2006 Board of Adjustment meeting (Doc. 53-31) which, somewhat counterintuitively, took place before the stop work orders were issued on October 3, 2006.  (Doc. 53-28).  The variance request on which the defendants rely is stamped "received" on November 28, 2006.  (Doc. 51-11).

the O'Neals from building duplexes, the defendants' enforcement of the zoning ordinance, and their actions "in numerous other ways."

> The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process.  A violation of either of these kinds of protection may form the basis for a suit under section 1983.

***

> The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty[.]" The Supreme Court has deemed that most-but not all-of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights . . . also merit protection.  It is in this framework that fundamental rights are incorporated against the states.  A Finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'"

> Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas.  In fact,

>> the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

> Hence, remaining largely outside the scope of substantive due process jurisprudence are tort law and public employment law.

> In short, areas in which substantive rights are created only by state law (as in the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution."  As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural-not substantive-due process are observed.

12

McKinney v. Pate, 20 F.3d 1550, 1555-56 (11th Cir. 1994) (case citations omitted).  Overturning prior Eleventh Circuit precedent, the en banc court in McKinney held that, "in non-legislative cases," government employees who lose their jobs may not prevail on substantive due process claims because their "employment rights are state-created rights and are not 'fundamental' rights created by the Constitution."  Id. at 1560.

The Eleventh Circuit applied the rule it pronounced in McKinney in a fairly recent case involving land use, Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258 (11th Cir. 2003).  In that case, a municipality passed an ordinance setting an expiration date on a land disturbance permit that allowed the landowner to clear land in anticipation of building a commercial site in an area that was not zoned for commercial use.  Id. at 1259-61.  As issued, the land disturbance permit had no expiration date.  Id. at 1260.

The landowner argued that the revocation of the permit violated its due process rights.  Id. at 1262.  The court of appeals found no violation of substantive due process rights.  It held that substantive due process rights protect fundamental rights, which are defined as "those rights created by the Constitution."  Id.  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id. (internal quotations omitted).  As a consequence, to the extent that the landowner "predicates its substantive due process claim directly on the denial of its state-granted and-defined property right in the permit, no substantive due process claim is viable."  Id.

There is an exception to this general rule.  There is a "distinction between 'legislative' acts and 'non-legislative' or 'executive' acts."  McKinney, 20 F.3d at 1557 n.9.

> Where an individual's state-created rights are infringed by 'legislative act,' the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government. See McKinney, 20 F.3d at 1557 n.9. The legislative nature of the act is key. "[N]on-legislative," or executive, "deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally. Constitutional due process is satisfied for these deprivations when proper procedures are employed."

Lewis v. Brown, 409 F.3d 1271, 1273 (11th Cir. 2005) (alteration in original).

Executive acts apply to a limited number of people or a single person. McKinney, 20 F.3d at 1557 n.9. In contrast, legislative acts "generally apply to a larger segment of-if not all of-society; laws and broad-ranging executive regulations are the most common examples." Id.

The right on which the O'Neals base their substantive due process claim is the ability to build duplexes on their three lots. To the extent that the O'Neals claim their rights were violated by non-legislative acts such as changing rationales for telling the O'Neals they could not build on the property, changing interpretations of the zoning ordinance, or enforcement of the zoning ordinance, those claims should not proceed past summary judgment because they are not based on a fundamental right.

To the extent that the O'Neals claim that their rights were violated by arbitrary and irrational legislative action, the substantive due process claim still fails. There is nothing in the record to show that amending the zoning ordinance was arbitrary or irrational. To the contrary, the city decided to amend the zoning ordinance while researching ways to improve its zoning ordinance and considering the detrimental effects of the grandfather clause in section 4.0201. See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1214 (11th Cir. 1995) (Zoning decisions are upheld under a substantive due process analysis if they are rationally related to legitimate general welfare concern based on a two step analysis of (1) identifying the legitimate

14

governmental goal and (2) finding a rational basis to believe that the legislation would further

that goal.).  Further, all of the legislative enactments and postings uniformly state that the new

zoning ordinance would take effect when the law was passed, not on January 1, 2006.

Relying on National Ass'n for Advancement of Colored People v. Alabama ex rel.

Flowers, 377 U.S. 288 (1964) ("NAACP"), and Gary v. City of Warner Robins, Ga., 311 F.3d

1334 (11th Cir. 2002), the O'Neals also argue that the City of Orange Beach violated their

"fundamental" First Amendment right to assemble by its "failure to post proposed changes to the

Ordinance, as well as the Amendment itself, in the manner prescribed by Alabama law."  (Doc.

58, p. 10).

In NAACP, the Attorney General of Alabama endeavored to oust the NAACP from the

state of Alabama because the NAACP had not registered with the Alabama Secretary of State in

order to do business here and because the NAACP engaged in activities that "were inimical to

the well-being of citizens of the State" of Alabama, including organizing and supporting an

"illegal boycott" to compel desegregation of a bus line in Montgomery, Alabama.  Id. at 289-90,

302.  Addressing whether the organization of the Montgomery bus boycott was sufficient

grounds for the State of Alabama to enjoin the NAACP from engaging in activity in Alabama,

the court made the "doubtful assumption" that the bus boycott could theoretically violate a valid

state law.  Id. at 307.  It then held "that freedom to engage in association for the advancement of

beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of

the Fourteenth Amendment."  Id.  Although governments may regulate conduct to achieve

permissible ends, the court explained, they may not do so in ways "that broadly stifle

fundamental personal liberties when the end can be more narrowly achieved."  Id. at 307-08.  It

concluded that "complete suppression of the [NAACP's] activities in Alabama" was too serious an abridgment of the right of freedom of association relative to the questionable governmental purpose of stifling an organized bus boycott.  Id. at 307-08.

In Gary, a city amended its ordinances to prevent persons under the age of 21 from working in establishments that sold alcohol for consumption in the premises but that did not generate at least two-thirds of their revenue from food sales.  Gary, 311 F.3d at 1336.  The plaintiff, a nude dancer under the age of 21 who was employed at an establishment that served alcohol but did not generate at least two-thirds of its revenue from food sales, alleged that the new city ordinance violated her rights of equal protection under the Fourteenth Amendment and of association under the First Amendment.  Considering first the equal protection claim, the court recognized that freedom of association is a "fundamental right," but held that the ordinance did not infringe on a fundamental right because "there is no generalized right to associate in alcohol-purveying establishments with other adults" and the plaintiff also had no right to engage in nude dancing in an alcohol-licensed establishment in the city.  Id. at 1338.

Although the O'Neals cite NAACP and Gary as authority for the proposition that their First Amendment right of association is a "fundamental" right, the O'Neals do not direct the court to any cases that stand for the proposition that failure to follow the state law in question, or any similar state law, is a violation of that right.

The O'Neals argue that the City of Orange Beach violated their fundamental First Amendment right to associate because the City of Orange Beach violated state law when it did not print notice of the proposed changes in The Islander.  There is no indication that such a failure, even if in violation of Alabama law, prevented the O'Neals from associating with

16

anybody or from attending the public meetings during which the amendment was considered.  To the contrary, notice of the Planning Commission meeting was printed in the Mobile Press-Register twice in September 2005 and was posted around town in August 2005.  A copy of the proposed amendment to the zoning ordinance was posted before the City Council considered it in October 2005 and a copy of the zoning ordinance, as amended, was posted after the City Council passed it in November 2005.  Jeffrey Moon wrote George O'Neal a letter, warning him that the process to amend the zoning ordinance might begin in September 2005.  These facts belie the assertion that the City of Orange Beach acted to prevent the O'Neals' right to freedom of association.

There is no need for a trial on the substantive due process claim.  The defendants' motion for summary judgment is **GRANTED** as to Count One.  To the extent that the plaintiffs' motion for summary judgment is directed at Count One, it is **DENIED**.

## IV.    COUNT TWO - PROCEDURAL DUE PROCESS

Procedural due process "cases typically focus on whether governments can take away property without affording its owner an adequate notice and opportunity to be heard." Greenbriar Village, 345 F.3d at 1264.  When courts analyze procedural due process claims, "they variously examine three things: (1) whether there is enough of a property interest at stake to be deemed "protectable"; (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation."  Id.

Unlike the O'Neals' substantive due process claim, which necessarily failed to the extent that it was based on a non-legislative act not based on a "fundamental" right, their procedural due process claim fails to the extent that it is based on a legislative act.

17

> [I]f government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process.  Or, as one set of commentators has summarized, "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process-the legislative process.  The challenges to such laws must be based on their substantive compatibility with constitutional guarantees."  By contrast, if government conduct is viewed as adjudicative in nature, property owners may be entitled to procedural due process above and beyond that which already has been provided by the legislative process.  When an adjudicative act deprives an individual of a constitutionally-protected interest, procedural due process is implicated, and a court would apply the familiar three-part balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine the dictates of due process in that particular situation.

75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1294 (11th Cir. 2003).  See also

Watson Construction Co. v. City of Gainesville, 244 Fed. Appx. 274, 276-77 (11th Cir. 2007)

(relying on 75 Acres for conclusion that city's action of passing a moratorium ordinance was a

legislative act to support the court's decision to affirm decision to reject procedural due process

claim).

The O'Neals' motion for summary judgment focuses, first, on whether the City of

Orange Beach followed proper state statutory notice procedure before amending the zoning

ordinance and, second, on an argument that this court should impose a January 1, 2006 effective

date on the amendment to the zoning ordinance because the City Council included an

immediately effective date in the amendment by mistake.  Neither argument supports granting

summary judgment to the plaintiffs.

In support of their first argument, the O'Neals say that "the City [of Orange Beach] did

not validly enact the Amendment, and thus, an action premised upon it is without a rationale

[sic] basis."  (Doc. 53-2, p. 10).  Although the argument that the City of Orange Beach may have

failed to follow the notice procedures set forth in the Alabama Code when it failed to publish

notices in The Islander prior to amending the zoning ordinance has some initial appeal in a "procedural" due process claim, and the facts on which the O'Neals rely to support their argument might be relevant from an evidentiary perspective to determine whether the City of Orange Beach violated the Fourteenth Amendment, any failure by the City of Orange Beach to follow state law cannot, in and of itself, support a substantive due process claim.

In Olim v. Wakinekona, 461 U.S. 238 (1983), a prisoner in Hawaii claimed that his transfer to a prison in California violated his procedural due process rights.  He claimed that the state did not follow its procedural rules when it decided to make the transfer.  Id. at 243.  The court held that failure to follow procedural rules did not implicate procedural due process concerns.  Id. at 248-51.  See also Snowden v. Hughes, 321 U.S. 1, 11 (1944) (the fact that an action is illegal under a state statute does not "add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution.  And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.") (internal citation omitted).  The United States Court of Appeals for the Seventh Circuit applied the foregoing precedent to a zoning case in River Park, Inc. v. City of Highland Park, 23 F.3d 164 (7th Cir. 1994).  The plaintiff in River Park complained that a city in Illinois dawdled on its application to rezone a piece of property for so long that the plaintiff went bankrupt in the interim.  Id. at 165. The plaintiff sued for a violation of the due process clause of the Fourteenth Amendment.  Id. Citing the Olim case, the Seventh Circuit held that the plaintiff

> may not have received the process Illinois directs its municipalities to provide,
> but the Constitution does not require state and local governments to adhere to
> their procedural promises.  Olim v. Wakinekona, 461 U.S. 238, 248-51, 75 L. Ed.
> 2d 813, 103 S. Ct. 1741 (1983); Archie v. Racine, 847 F.2d 1211, 1215-18 (7th

Cir. 1988) (en banc).  Failure to implement state law violates that state law, not
the Constitution; the remedy lies in state court.

Id. at 166-67.

The Supreme Court recently issued a similar ruling in the Fourth Amendment context.

Although a police officer's search may have violated state law, violation of state law did not

implicate the Constitution.  "We conclude that warrantless arrests for crimes committed in the

presence of an arresting officer are reasonable under the Constitution, and that while States are

free to regulate such arrests however they desire, state restrictions do not alter the Fourth

Amendment's protections."  Virginia v. Moore, --- U.S. ----, 128 S.Ct. 1598, at 1607, 2008 WL

1805745, at *8 (2008).

Based on the foregoing precedent, the O'Neals cannot show that they are entitled to

judgment as a matter of law based on the argument that the City of Orange Beach did not follow

statutory notice procedure when it failed to publish notice of the proposed zoning change in The

Islander before it passed the amendment to the zoning ordinance.  Properly noticed or not

pursuant to state law, the City Council amended the zoning ordinance at a City Council meeting,

and City of Orange Beach is acting under the impression that it validly amended its zoning

ordinance.  Any failure by the defendants to follow the statutorily-prescribed procedure does not,

in and of itself, support the conclusion that the O'Neals' constitutional rights were violated.

The court also finds that the O'Neals' second argument -- that the effective date included

in the amendment to the zoning ordinance is a typographical error -- does not entitle them to

summary judgment.  The court would have to find that the City of Orange Beach violated the

Constitution either when it made a typographical error passing the amendment or, later, when it

decided to follow the language of the written amendment.  The O'Neals cite no support for their

request.  The court rejects it.  The plaintiffs' motion for summary judgment as to Count Two is

**DENIED**.

The defendants also moved for summary judgment on the procedural due process count.

Neither party pinpoints what act was taken without the proper amount of due process.

To the extent that the O'Neals allege that they were denied procedural due process when

the amendment to the zoning ordinance was passed, they cannot prevail because amending a

zoning ordinance is a legislative act.  As explained above, the legislative process is all of the

process to which the O'Neals were entitled.  Any attempt to call into question the propriety of

applying this rule based on the O'Neals' claim that they did not receive proper notice of the

hearings during which the amendment was considered and passed cannot overcome this

conclusion.  Violation of the Alabama Code does not equate to violation of the Fourteenth

Amendment.  Likewise, the amount of "process" that the Fourteenth Amendment requires before

passing zoning amendments is minimal.

> The procedures due in zoning cases, and by analogy due in cases such as this one
> involving regulation of land use through general police powers, are not extensive.
> For example, the Supreme Court held in City of Eastlake v. Forest City
> Enterprises, Inc., 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), that a local
> government could, consistent with the Due Process Clause, make zoning
> decisions through the political process in a referendum with no hearings of any
> kind.  See id. at 677, 679, 96 S.Ct. 2358; see also River Park, Inc. v. City of
> Highland Park, 23 F.3d 164, 166-67 (7th Cir. 1994) (discussing Eastlake and
> concluding that "the procedures 'due' in zoning cases are minimal").

Tri County Paving, Inc. v. Ashe County, 281 F.3d 430, 436 (4th Cir. 2002).  The parties have not

directed this court to any Eleventh Circuit cases interpreting City of Eastlake any differently.  To

the contrary, the Greenbriar Village case cites Tri County Paving with approval, although for

other points of law.  Greenbriar Village, 345 F.3d at 1264.  In short, if procedural due process

does not require "hearings of any kind," any defect in the notice provided to alert the public of the gratuitous hearings is a procedural state law, violation of which cannot form the basis of a procedural due process claim.

To the extent that Count Two rests on subsequent denials of variances or other requests to continue construction of the duplexes, the record indicates that the O'Neals were provided a certain amount of process. The O'Neals have not shown how that process was inadequate as a matter of law, nor have they shown a legally relevant defect in how the process was applied. The defendants' motion for summary judgment on Count Two is, therefore, **GRANTED**.

## V.      COUNT FOUR - INVERSE CONDEMNATION

Count Four, which the O'Neals entitled "Inverse Condemnation," alleges that the defendants' "promulgation, interpretation, and application of the Amendment [to the zoning ordinance] threatens to deprive Plaintiffs of the use of the Property," and that the "Defendants have threatened a complete taking of the Property without formal condemnation proceedings and without paying to Plaintiffs just compensation, such that an inverse condemnation should be held to have occurred." (Doc. 1, ¶¶ 32 and 33).

The defendants' motion for summary judgment on this count focuses on the argument that the O'Neals have not suffered a sufficient deprivation of their interest in the property to justify recovery on this theory. (Doc. 50, pp. 15-17; Doc. 61, p. 7). The O'Neals counter by arguing that the City of Orange Beach has occupied or injured their property. They agree that, if the zoning regulations were legitimately passed, the "federal case law put forth by the City might be apposite." (Doc. 58, p. 14). They attempt to distinguish the cases on which the defendants rely by pointing to the potentially "groundless restriction of the use of the property to only single

family residential" housing.  (Doc. 58, p. 14).

The O'Neals do not direct the court to any facts in the record to support the conclusion that they have suffered a constitutional taking, a prerequisite to a claim for inverse condemnation.  U.S. v. Clarke, 445 U.S. 253, 257 (1980) ("The phrase 'inverse condemnation' appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted."); Matthews v. Shelby County Com'n, 615 So. 2d 605, 609 (Ala. Civ. App. 1992) ("In McClendon v. City of Boaz, 395 So.2d 21, 24 (Ala. 1981), our supreme court defined inverse condemnation as 'the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a government agency or entity which has the right or power of condemnation.'"); Jefferson County v. Southern Natural Gas Co., 621 So. 2d 1282, 1287 (Ala. 1993) (defining "inverse condemnation" as action against a government authority to recover value of taken property, "it is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when the taking authority has not initiated condemnation proceedings.").

No governmental entity has physically invaded the O'Neals' property.  Lucas v. South Carolina Costal Council, 505 U.S. 1003, 1015 (1992) (physical invasion of property is a taking); Jefferson County, 621 So. 2d at 1287 (governmental authority "need only occupy or injure the property in question" in inverse condemnation proceedings).  There is no showing that, or direct argument explaining how, enforcement of the amended zoning ordinance will sufficiently deny the O'Neals of the "economically beneficial or productive use of land," to constitute a taking. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015-16 (1992); Penn Central Transp.

Co. v. City of New York, 438 U.S. 104 (1978) (a regulation's diminution in value of property alone is not a taking). The O'Neals' argument that their property has been "taken" based on the possibility that the zoning ordinance was not properly amended is not supported by the facts or the law.

The defendants' motion for summary judgment on Count Four is **GRANTED**.

## VI.   COUNT THREE - TAKING WITHOUT DUE COMPENSATION

The O'Neals allege that:

> If the City were successful in its effort to prevent O'Neal from building the duplexes on the Property, both the Alabama and Federal Constitutions would require that due compensation be paid. The City has acknowledged that it must pay Plaintiffs fair and adequate compensation if the Amendment is effective against O'Neal or alternatively for the delay caused O'Neal.

(Doc. 1, ¶ 29). They ask for a trial to determine the "fair and adequate compensation" for the alleged taking. (Doc. 1, ¶ 30).

The City of Orange Beach argues that this claim is premature because the O'Neals could prevail on Count Four for inverse condemnation. (Doc. 50, pp. 14-15). The O'Neals limit their response to the assertion that FED. R. CIV. P. 8(d)(3) allows them to plead in the alternative.[4] (Doc. 58, pp. 13-14). They do not direct the court to any facts in the record to support their initial allegation that the City of Orange Beach acknowledged a duty to pay any compensation to the O'Neals. The City of Orange Beach replies to say that the plaintiffs did not offer any facts or law to support their taking claim. (Doc. 61, pp. 6-7).

The City of Orange Beach's argument that this claim is premature is not a winner

---

[4]This basic rule was set forth in FED. R. CIV. P. 8(e)(2) until the amendments to the Federal Rules of Civil Procedure took effect on December 1, 2007.

because it relies on the premise that the O'Neals might prevail on their inverse condemnation claim. At this stage of the case, it is unlikely that the O'Neals will prevail on their inverse condemnation claim because this court granted summary judgment on that claim to the defendants. Although the defendants did not advance any facts to show that the O'Neals cannot prove a taking in their argument for summary judgment on Count Three, the court granted summary judgment on Count Four based on its conclusion that there was no showing of a taking to support a cause of action for inverse condemnation. The court **GRANTS** the defendants' motion for summary judgment on Count Three for the same reasons that it granted the defendants' motion for summary judgment on Count Four.

## VII.   COUNT FIVE - FRAUD/MISREPRESENTATION AND SUPPRESSION

Plaintiffs base Count Five on the allegation that the defendants misrepresented that the O'Neals could build duplexes on their property. (Doc. 1, ¶ 35). The O'Neals allege that they

> relied to their substantial detriment on (1) the application plan review process and issuance of a building permit by the City, (2) representations made by Defendants regarding the legality of constructing duplexes on the Property, and (3) upon the City's failure to timely notify O'Neal that it was reneging on its repeated intentional or negligent representations to O'Neal that he could build duplexes, and (4) the City's failure to timely notify O'Neal of any violation.

(Doc. 1, ¶ 36).

As a preliminary matter, there is no argument on summary judgment to support a claim for suppression. To the contrary, the plaintiffs entitle the section of their brief addressing Count Five "Negligent Misrepresentation" and make their argument accordingly. The claim for suppression is abandoned. Resolution Trust Corp., 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Although some of the cases cited in the briefing address estoppel theories, there is also no claim for estoppel.

25

Rather, the parties focus on whether statements that various agents of the city made to the effect that the amendment to the zoning ordinance would not become effective until January 1, 2006, are actionable misrepresentations.

"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." ALA. CODE § 6-5-101 (1975). The Supreme Court of Alabama recently summarized the elements of this cause of action as "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." McCutchen Co., Inc. v. Media General, Inc., --- So. 2d ----, 2008 WL 204449, at *3 (Ala. 2008).

The evidence of record shows that Jeffrey Moon wrote the O'Neals a letter dated August 10, 2005, telling them that the City of Orange Beach was considering repealing the "grandfather clause" in the zoning ordinance on which the O'Neals would rely in order to build duplexes on their lots. He encouraged the O'Neals "as soon as possible to schedule a meeting with Community Development staff to discuss your plans. Obviously, if you have a building permit prior to Section 4.0201 being repealed, you would be 'grandfathered in.'" (Doc. 53-11, p. 2). The letter warns the O'Neals that they will lose their right to build duplexes when section 4.0201 is repealed, says that section 4.0201 may be repealed soon, but does not say when.

A memorandum from Jim Lawson to the Planning Commission indicated that the amendment to the zoning ordinance would not delete Section 4.0201 until January 1, 2006, (Doc. 53-14, p. 3), but the evidence does not show that this memorandum was directed to the O'Neals.

The notices for the September 13, 2005 Planning Commission meeting do not say when the amendment would take effect.  (Doc. 53-15, p. 2).  The notices for the October 18, 2005 City Council meeting do say when the amendment would take effect - immediately upon adoption and posting.  (Doc. 53-21, p. 4).

At the City Council meeting on October 18, 2005, Jim Lawson apparently told the City Council that the amendment would not take effect until January 1, 2006, but there is no evidence that this statement was made to the O'Neals.  The record does not show that any of the plaintiffs attended the City Council meeting.  The amendment was posted, as passed, after the City Council meeting.  The O'Neals did not apply for their building permits until December 29, 2005, over two months after the zoning amendment was passed.  They did not receive the building permits until July and August 2006, almost 10 months after the zoning amendment was passed.

At the October 3, 2006 City Council meeting that took place after the stop work orders were issued, George O'Neal indicated that he had "been dealing with this ever since December 12th," which was almost two months after the zoning ordinance was amended.  (Doc. 53-29, p. 4).  George O'Neal also referred to his August 10, 2005 letter from Jeff Moon to support his position that he should be allowed to build his duplexes.  (Doc. 53-29, p. 4).  Again, Jeff Moon's letter did not say when the amendment would take effect.

The O'Neals do not show that any misrepresentations about the effective date of the amendment to the zoning ordinance were made to the O'Neals until after the zoning ordinance was amended and after the O'Neals applied for their building permit.  To the extent that the O'Neals attempt to rely on misrepresentations that took place after the zoning ordinance was amended, their claim fails because the amended zoning ordinance, as posted before and after the

October 18, 2005 City Council hearing at which it was passed, clearly shows that the amendment

would take effect immediately, not on January 1, 2006.  Any reliance on statements to the

contrary at that point was not reasonable.  Because the O'Neals filed their complaint after March

14, 1997,

> the "reasonable-reliance standard" applies.  A purchaser's "reliance is reasonable
> in the absence of independent knowledge sufficient to arouse the purchaser's
> suspicion, and he is not obligated to make an independent investigation as to the
> truth of the seller's representations absent such knowledge."  "If the
> circumstances are such that a reasonably prudent person who exercised ordinary
> care would have discovered the true facts, the plaintiffs should not recover."
> While this Court has held that real estate brokers and salespersons may be held
> liable for representations they make to induce a purchaser to act, "'[i]f the
> purchaser blindly trusts, where he should not, and closes his eyes where ordinary
> diligence requires him to see, he is willingly deceived, and the maxim applies,
> "volunti non fit injuria".'."

Ex parte ERA Marie McConnell Realty, Inc., 774 So. 2d 588, 591 (Ala. 2000) (emphasis and

internal citations removed).  Here, the evidence shows that the O'Neals knew that the

amendment to the zoning ordinance, once it became effective, would preclude their right to build

the duplexes they wanted to build.  That amendment was part of the public record by the time

anybody told the O'Neals that the amended ordinance had a January 1, 2006 effective date.  The

O'Neals do not show with any specificity what statements they are relying on to make their

claim, but any reliance on statements - whatever they were - was not reasonable because the

O'Neals could easily have discovered their inaccuracy by reading a copy of the amended zoning

ordinance after it was passed and posted.

Although the record does not show that the O'Neals were told before the amendment was

passed that the amendment would take effect in January 1, 2006, the O'Neals seem to assume

that fact in the argument section of their brief.  (Doc. 58, pp. 15-16).  The absence of an

evidentiary basis to conclude that such statements were made notwithstanding, the O'Neals' reliance on any such statements would not have been reasonable, either.  A statement "of opinion or prediction as to events to occur in the future is not a statement of a 'material fact' upon which individuals have the right to rely and, therefore, it will not support a fraud claim.  Where the representation of an opinion is involved, a person must prove not only that there was an intent to deceive, but also that his reliance was reasonable." McCutchen, 2008 WL 204449, at *3.

There is nothing in the record to show that any party intentionally deceived the O'Neals. To the contrary, it appears that any statements made to the O'Neals about the future content of the zoning amendment was sincere, although mistaken, which will not support the O'Neals' claim. Id. at **3-4.

The defendants' motion for summary judgment on Count Five is **GRANTED**.

## VIII.   COUNT SIX - NEGLIGENCE/FAILURE TO PROVIDE HONEST GOVERNMENT

Plaintiff alleges that the "Defendants' negligent, reckless or wilfull [sic] failure to draft the Amendment as intended by the City Council has acted to breach Defendant's [sic] duty to provide honest government to O'Neal and its citizenry which, has caused Plaintiffs substantial hardship and damage."  (Doc. 1, ¶ 39).  The briefing on summary judgment focuses on the "negligent drafting of the Amendment" as the factual predicate for this claim.  (Doc. 58, p. 16).

As the defendants point out, the Alabama Code contains a provision, limiting municipal liability to some extent.

> No city or town shall be liable for damages for injury done to or wrong suffered
> by any person or corporation, unless such injury or wrong was done or suffered
> through the neglect, carelessness or unskillfulness of some agent, officer or
> employee of the municipality engaged in work therefore and while acting in the
> line of his or her duty[.]

A<span>LA</span>. C<span>ODE</span> § 11-47-190 (1975).  The parties do not focus, however, on whether this statute

provides a basis for summary judgment.  Rather, they argue about whether the defendants are

entitled to summary judgment based on the Supreme Court of Alabama's policy decision to

preclude municipal liability to individuals under certain circumstances based on the absence of a

proper legal duty.  The Alabama court refers to this doctrine as "substantive immunity."

In order to prevail on a claim for negligence, "the plaintiff must prove (1) that the

defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the

plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and

proximate cause of the plaintiff's loss or injury."  DiBiasi v. Joe Wheeler Elec. Membership

Corp., --- So. 2d ----, 2008 WL 110451, at *4 (Ala. 2008).  The existence of a duty is a question

for the court to decide.  Id.

The Supreme Court of Alabama adopted the doctrine of substantive immunity in Rich v.

City of Mobile, 410 So. 2d 385 (1982).  After a sewer back-up that overflowed into the

plaintiffs' home in that case, the plaintiffs sued the city for negligent failure to inspect or

negligent inspection of sewer lines near the plaintiffs' home.  Id. at 385.  The court characterized

the claim as follows:

> Stated simply, Plaintiffs would have this Court hold: 1) the duty imposed upon
> the City plumbing inspectors is one which is owed, not to the public generally (as
> is the case of a public official), but to individual homeowners; and, 2) the breach
> of such duty will support the homeowner's action for resultant damages.  This we
> cannot do[.]

Id.  After reviewing cases from other jurisdictions addressing the topic, the court decided that,

although an individual homeowner, like the plaintiff, could be affected by the negligence of a

city sewer inspector, the city's "larger obligation to the whole of its resident population is

paramount" and imposing liability on the city for the plaintiffs' individual loss would improperly threaten "the benefits of such services to the public-at-large." Id. at 387. It summarized:

> We believe these public policy considerations . . . override the general rule [that a city is liable for the negligence of its employees under ALA. CODE § 11-47-190 (1975)] and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.

Id. The court called its public policy decision to find that the city does not owe individuals a legal duty in tort under certain circumstances "the substantive immunity rule of this case." Id. The rule, the court held, should be narrowly construed and "given operative effect only in the context of those public service activities of governmental entities . . . so laden with the public interest as to outweigh the incidental duty to individual citizens." Id. at 387-88.

Relying on Rich, the Supreme Court of Alabama invoked the doctrine again, and further explained it, in Hilliard v. City of Huntsville, 585 So. 2d 889 (Ala. 1991). In Hilliard, a municipality negligently inspected the wiring in an apartment complex, leading to an electrical fire that killed the plaintiff's wife and children. Id. at 889-90. The Alabama Supreme Court affirmed judgment on the pleadings in favor of the municipality.

The court explained that a municipality must breach a legal duty before it can be liable for negligence. Id. at 890. The initial focus is on the nature of the duty - it must stem from the common law or a statute. Id. Although municipalities are no longer necessarily immune from suit when they negligently perform a governmental function, id., Rich provides that a municipality is not liable to an individual when it breaches a duty it owes to the public in general. Id. at 891. This is true even if, by breaching its duty to the public, it breaches an

incidental duty to an individual member of the public.  Id.  The Hilliard court also refers to this absence of a legal duty as "substantive immunity."

If a municipality's duty to the public to perform electrical inspections outweighs the incidental duty the municipality owes to the individuals who live in the apartment complexes it inspects, then the duty a municipality owes to the public to draft properly zoning ordinances outweighs any similar incidental duty a municipality may owe to individual members of the public.  Call it "substantive immunity" or call it "the absence of a legal duty owed to individuals," the duty to draft ordinances with care and to provide "honest government" is owed to the public.  Assuming that there is an incidental duty to individual citizens, the activity of passing legislation is at least as "laden with the public interest" as the duty to inspect wiring was in Hilliard, that it outweighs any "incidental duty to individual citizens" such as the plaintiffs. But cf., City of Mobile, Ala. v. Sullivan, 667 So. 2d 122 (Ala. Civ. App. 1995) (Plaintiffs alleged that city employees negligently represented that property was zoned for a certain commercial use, inducing the plaintiffs to purchase the property.  Substantive immunity did not apply because the city created a duty to the plaintiffs when the city, among other things, provided written verification to the plaintiffs that property was zoned a certain way.  The court "strictly narrow[ed] this holding to this case.  Nothing in this opinion should be construed to indicate that this exact result would occur in a similar, but not identical, situation." Id. At 127-128.).

The cases discussing the doctrine of "substantive immunity" apply the doctrine to municipalities.  Although neither party sets forth any argument as to the defendants other than the City of Orange Beach itself, the court finds that the doctrine applies to all of the defendants in this case.  There is nothing before the court to show that the city council, the mayor, or the

Department of Community Development owed or breached a duty to the plaintiffs to draft legislation with care.  <u>See</u> <u>Rich</u>, 410 So. 2d 385 (public officials owe their duty to the public).  If there is no duty, there is no negligence.  <u>DiBiasi</u>, 2008 WL 110451, at *4.

The defendants' motion for summary judgment on Count Six is **GRANTED** because any duty that the defendants may have breached was owed to the public in general, not to the O'Neals specifically.

Because the court's rulings on defendants' motion for summary judgment disposes of the case, the defendants' motion to strike is **MOOT**.

**DONE and ORDERED** this 14th day of May, 2008.

/s/ Callie V. S. Granade_____
CHIEF UNITED STATES DISTRICT JUDGE